UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASSANDRA PRZENKOP,

        Plaintiff(s),

Case NO.  2:18-CV-14265RLR

vs.

TC PAYROLL, LLC,
and IGOR PIMENTEL,

        Defendant(s).
_____/

**MEMORANDUM OF LAW
AND STATEMENT OF FACTS
IN OPPOSITION TO THE PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE
<u>EXECUTIVE EXEMPTION OF THE FAIR LABOR STANDARDS ACT</u>**

**COMES NOW**, the Defendants, TC PAYROLL, LLC, and IGOR PIMENTEL, by and through his undersigned counsel and gives this their Memorandum of Law and Statement of Facts in Opposition to the Plaintiff's Motion for Partial Summary Judgment as to the Executive Exemption of the Fair Labor Standards Act.  In opposition to the Plaintiff's Motion for Partial Summary Judgment the Defendants would show:

      The Plaintiff filed a Two Count Complaint alleging: Count I - FLSA Overtime Claim and Count II - Retaliation.

      The Defendants have raised as a defense to the Plaintiff's FLSA Overtime Claim that the Executive Exemption pursuant to 29 U.S.C.S., §213(a)(1) applies to the Plaintiff and that she is a bona fide manager under the exemption.  For the Defendants to utilize the Executive Exemption, the following requirements of 29 CFR §541.100 (2018) must be met:

      I.      The employee must be compensated on a salary basis at a not less than $455.00 per week;
      ii.     The employee's primary duty must be managing the enterprise or a customarily recognized department or subdivision of the enterprise;
      iii.    The employee must customarily and regularly direct the work of at last two or more full-time employees or their equivalent; and
      iv.    The employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.

While there are four requirements of the regulation, as outlined above, the Plaintiff is not contesting the requirements set forth in 1, 3 or 4, but relies upon the assertion that the Defendants can not show pursuant to requirement 2 of the regulation that, "the employees primary duty must be managing the enterprise or a customarily recognized department or subdivision of the enterprise;".  The Plaintiff asserts her primary duty was not management. (ECF No. 31, Page 3, ¶1).  While the Plaintiff does not seek Partial Summary Judgment on paragraphs 1, 3 or 4 of the regulation all four parts of the regulation must be discussed and analyzed as they are inextricably intertwined one with the other in determining the Plaintiffs status as a manager.

## ORGANIZATIONAL STRUCTURE OF
## TC PAYROLL, LLC AND ROLE OF IGOR PIMENTEL

TC PAYROLL, LLC, controls and operates twenty-eight (28) Dunkin Donut Franchises throughout the Southeast Florida area.  DUKE PROCTOR, is the Regional Manager who overseas all twenty-eight (28) stores, but primarily does so through three (3) General Managers. The Defendant, IGOR PIMENTEL, is the General Manager of eleven (11) Dunkin Donut Stores including the one where the Plaintiff worked, Palm City Donuts.  The twenty-eight (28) Dunkin Donut Stores including Palm City Donuts do not bake their own donuts, but are

supplied donuts through a kitchen facility owned by another company.

IGOR PIMENTEL as General Manager is not a day to day manager of any one of the eleven (11) stores he overseas, but is there to provide support when issues arise for any store including ordering food products, paper or serving supplies, providing temporary employees to satisfy labor shortages, and to facilitate the solving of any problems not a routine daily matter which may develop at any particular store.  He is also a General Manager who trains the managers. (Affidavit Ex. 1, page 1,¶3).

## APPLICATION OF
## MORGAN V. FAMILY DOLLAR STORES, INC.
## TO THE DEFENDANT EXEMPTION

The seminal case in the Eleventh Circuit is <u>Morgan v. Family Dollar Stores, Inc.</u>, 551 Fed. Third 1233 (Eleventh CIR 2018) which ruled, inter alia, directly on the application of the Executive Exemption.  The <u>Morgan</u> court used and relied upon the fifteen (15) various activities set forth in 29 CFR §541.012 to assist in the determination of what constitutes the primary duties of a manager were, but noting that, "regulations do not define primary duty", but note instead that, "the answer to the primary duty question "must be based on all facts in a particular case."  29 CFR §541.700(a) and <u>MORGAN</u> @1267.   The Court noted the, "necessarily fact-intensive nature of the primary duty inquiry", and that "the answer is in the details" <u>MORGAN</u>@ 1269.  With this direction to rely on the facts, we analyze the fifteen (15) factors set forth in <u>Morgan</u> @ 1267, which are:

I.      **interviewing, selecting and training of employees:** The Plaintiff was solely responsible for hiring and interviewing employees as indicated by the new Employment  Applications and Notice (Ex. 2).  While these applications were

forwarded to the main office of TC PAYROLL, LLC., and it would be possible that if an employee, was an undocumented alien, misrepresented facts, or had certain types of criminal convictions they would not be hired, none of the recommended hirings forwarded by the Plaintiff were over-ruled. (Affidavit, Ex. 1, page 2, ¶4).

ii. **setting and adjusting their rates of pay and hours of work:** The Plaintiff was solely responsible for setting the schedules of the twenty five to thirty (25-30) employees working for Palm City Donuts through the use of Radiant, a software program used by the Plaintiff through out her time as manager. A sampling of the weekly schedule prepared and entered into the Radiant system is attached as Ex. 4. The Plaintiff was additionally allowed to make recommendations to her general manager for increases in pay to various workers, however the Plaintiff made no such requests (Ex. 1, page 3, ¶5).

iii. **directing the work of employees:** This activity along with **planning the work (viii), determining the techniques to be used (ix); and apportioning the work among the employees (x),** are all inter related in that it was the Plaintiff's responsibility as manager to choose and assign employees to achieve the operation of a restaurant in an efficient manner which maintained food safety and quality controls. To assist, Dunkin Brands, the franchisor, prepared a set of requirements and protocols set forth in the Manager's Red Book (Ex. 20). The Manager's Red Book contained checklists for store operation, directions for food handling and storage, and guidelines for maintaining the stores a compliance with

Page 4 of 15

State and local health codes and regulations. The Manager's Red Book contained, inter alia, a required Daily Cleaning Grid (Ex. 13), a Quality and Temperature Daily Log (Ex. 14), a Food Safety Daily Activities, along with a Closing Checklist (Ex. 18), a Pre-Shift Checklist (Ex. 19) and a Master Sanitation Schedule (Ex. 16) which were for items which occurred routinely, but not every day. Please note that many items such as Food Safety, Daily Activities Cold Holding, and the Daily Cleaning Grid occurred several times a day and were ongoing throughout the stores operation. It was the manager, herein the Plaintiff, who was required to schedule and plan the work for the day considering the time, staff and individual employees working any individual day, apportion the work throughout the three (3) shifts, and assign and direct which employees would do which work at what times. It was the Plaintiff as manager who determined how these various task were going to be performed by the employees, insure that the materials necessary for completing the tasks were available, and more importantly that each employee assigned a task knew how to fulfill the task. The Plaintiffs job as a manager required her to assign and review the performance of employees on each shift to confirm that the food items were stored and handled properly, and that health and safety compliance was maintained. The performance of Plaintiffs duties could be performed in store, or through the use of her telephone to insure the work assignments were being completed across all three (3) work shifts. (Ex. 1 page 2, ¶6).

    iv.    **maintaining production or sales records for use in supervision or control:**

    The point of sales system (POS) utilized by TC PAYROLL, LLC, recorded all inputting of sales records through cash registers throughout the store, and employees work schedules. The POS system provided a real time analysis of the cash flow, and sales production of any individual Dunkin Store. The Plaintiff as manager was required to supervise the use of the cash registers both to obtain an accurate record, and as a deterrent for any possible employee mishandling of orders or misappropriation of funds. (Ex. 1, page 3, ¶7).

v. **appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status:** The Plaintiff as manager was the only onsite person who had the opportunity to determine the extent and quality of the work of any individual employee. Unless raises were given to all employees by the Defendant, TC PAYROLL, LLC, it was the Plaintiff as manager who was the only person available to make an application for and recommend the promotion of or the increase of pay for any individual employee. The Plaintiff was authorized to make recommendations for pay increases to other employees, but did not do so during her employment as manager. (Ex. 1, page 3, ¶8). Although, Plaintiff as manager did exercise the ability to hire, fire and discipline employees as evidenced by Ex. 2 and 3.

vi. **handling employee complaints and grievances**: Combined with **disciplining employees** (vii) the resolution of employee complaints and grievances were the sole responsibility of the Plaintiff as store manager. The Plaintiff as manager was the only responsible person an employee could turn to

for the handling of complaints and grievances with other employees as the general manger and regional manager had insufficient information to resolve such issues even had they been called upon to do so. The Plaintiff as manager routinely handled such matters with several resulting in termination from work if the employee was not willing to work amicably within the store. (Ex. 3) (Ex. 1, page 4 ¶9).

xi. **determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold:** As noted, the Dunkin franchise for which Plaintiff was the manager was a food service company, and it was the role of the manager to determine the stock needed, the donuts, cups straws, paper bags, and other routine and ordinary supplies used daily by her store that the Plaintiff was responsible. The manger was required to make the daily ordering for the supplies sold at the store and was provided with Daily Build-to Sheets for ordering (Ex.25), and donut ordering sheets (Ex. 17 and Ex.1, page 4 ¶10).

xii. **controlling the flow and distribution of materials or merchandise and supplies**: Typically during busy shift periods in the morning and early afternoon, the Palm City Store the Plaintiff managed would have six (6) employees in addition to the Plaintiff. The employees were typically assigned two (2) in food preparation, two (2) at the front counter with a cash register, and two (2) at the drive through window with a cash register also. The Plaintiff as manager was required to monitor all three (3) stations, solve any problems with

orders as they arose, closely supervise the direct inputting of orders and receipt of payment, resolve customer complaints, and be available to step in immediately to resolve any issues that arose at any of the three (3) stations. While the Plaintiff as manager would step in and alleviate any problems at any one of the stations, it was her job to control the flow of merchandise (food and beverages) to the customers with as little disruption as possible. (Ex. 1, page 4, ¶11).

xiii. **providing for the safety and security of the employees or the property:** The Plaintiff as manager was required to either personally open, close and secure the premises when not in operation. The Plaintiff could also delegate the responsibility to certain employees who would be provided with keys and any security codes necessary to secure the premises. Additionally, the manager was responsible for the securing of any cash which was not deposited in the bank (Ex. 1, page 4 ¶12). It was to the Plaintiff as manager that the responsibility rested to handle any security issue which required contact with the Police, and the Plaintiff interacted directly with the police in resolving any issues, reporting any crimes, and providing necessary information. (Ex. 1, page 4 ¶12, and Ex. 9).

xiv. **planning and controlling the budget:** The budget in the Dunkin Store Plaintiff managed was not set by the Plaintiff as manager, or by IGOR PIMENTEL, the general manager, but purely based on sales. It was the amount of sales per store that determined the projected number of employee hours that would be available for the upcoming week for each store. ( (Ex. 1, page 5 ¶13, and Ex. 22). Exhibit 22 is an email from Duke Proctor on behalf of TC

> PAYROLL, LLC, indicating the employee hours available for each store for the next week as a result of individual store sales. Plaintiff had as manager the difficult and time consuming job of allocating employees time throughout the work week for each shift considering not only the time requirements of the particular shift, but the ability of each individual employee to fulfill the shift needs (Ex. 1, page 5, ¶13).

xv. **monitoring or implementing legal compliance measures:** As a member of the food service industry, Palm City Donuts which the Plaintiff managed had as a continuing imperative of compliance with health and safety laws which the Plaintiff was required to implement and control. The dictates of the Daily Cleaning Grid (Ex. 13), the Quality and Temperature Control requirements (Ex. 14), and the Food Safety Daily Activities Log (Ex. 15), were continuing obligations and reminders of the tasks to be performed by the manager to insure compliance with food safety. It was the Plaintiff as manager who was onsite and obligated to comply with the spot checks performed by the Florida Division of Hotels and Restaurants and the County Health Department for her store. No notice was given of these inspections, and if any general manager or regional manger was present during any of these health inspections it was by mere coincidence and not additional supervision of the Plaintiffs managerial activities (Ex. 1, page 5, ¶14).

## ADDITIONAL FACTORS

There are additional factors not easily assigned to the fifteen (15) referenced managerial

activities indicated by the <u>Morgan</u> court: a) the Plaintiff as manager was required to perform time punch audits where she would change or amend the hours and days worked of employees to insure accuracy (Ex. 5), b) perform crew member status audits (Ex. 6) to verify the employees who are available for scheduling c) Plaintiff was required to log on and complete various management courses on a continuing basis (Ex. 7), d) Plaintiff was required to handle any large orders or commercial orders for product (Ex. 8), e) Plaintiff handled and corrected employee payment issues (Ex. 11), and f) Plaintiff was th sole arbiter for customer complaints and developing continuing relationships with customers by determining in what manner to resolve issues with customers to obtain their satisfaction (Ex. 12 and Ex. 1, page 6, ¶15).

Finally, the manager and specifically the Plaintiff had another list of managers tasks which were the Plaintiffs duties pursuant to the Manager's Tasks (Ex. 21) to schedule and complete. They were;

    i. Complete Pre-Shift Checklist (3 times daily).
    ii. Inventory Work Flow Processing - Daily - BOS, Physical Inventory Daily - BOS, waste Tracking.
    iii. Review GSS Reports.
    iv. Product Receiving Check -CML.
    v. Service with Speed - Tracking Reports, Time Measurement, Executing Speed Tips.
    vi. Safe Audit (balance after each shift)
    vii. CML Production Order Review and Adjustments.
    viii. Baking/Finishing Scheduling Adjustments.
    ix. Deposit and Bank Run.
    x. Cashier Drawer Balance/Audit
    xi. Employee Training Hands On.
    xii. Employee Training Performance Check.
    xiii. Coffee Excellence Calibration.
    xiv. Review Red Book General - (Temp. Logs, Receiving Log, Conversations Log).

Please note on the Manager's Tasks the requirements for Employee Training Hands On and

Employee Training Performance Check.  It was the managers duty and specifically the Plaintiffs duty to continually train both and new and old employees to insure that they were performing correctly, providing the best service, and complying with all food service laws concerning the handling, preparation and storage of food products.  This in fact was the primary duty of the manager over and above all of the other duties that the Plaintiff may have had, and the singular reason why the assertion that the Plaintiff spent "80-90 percent" of her time performing non managerial duties is specious (ECF No. 31, page 4, ¶2).  In fact, with the number of managerial tasks and duties required by the Plaintiff as outlined hereinabove, her managerial duties would have taken more than fifty (50%) percent of her time leaving less than fifty (50%) percent of her time for non managerial duties.  (Ex. 1, page 6, ¶15).

The payroll journal of the Defendant, TC PAYROLL, LLC, (Ex. 24), indicates that the pay range for non managerial employees was $8.00 to $8.90 per hour or $324.00 to $356.00 per week.  This same exhibit reflects that during almost the last year of the Plaintiffs employment as manager, she grossed $616.00 per week.  Additionally, the weekly schedule  prepared by the Plaintiff as manager (Ex. 4), indicates that the Plaintiff working as a manager never worked more than forty-eight (48) hours in any week.

## AFFIDAVIT OF CASSANDRA PRZENKOP

As manager the Plaintiff could make and determine her own schedule.  However, the Plaintiff's scheduling of her own working hours from 4:30 a.m., until 12:30 p.m. (Ex. 4) had nothing to do with managerial duties, but more to do with her wanting to be free all afternoon to engage in her private activities and the Plaintiff had been requested  on a number occasions to change her schedule so that she was available to spend time not only with the morning shift,

but with the mid shift and the night shift  (Ex. 1, page 7, ¶17 and Ex. 23, Letter of Counseling). The Plaintiff consistently scheduled herself in the early morning hours and no later than 12:30 p.m., not as a necessity, but for her own convenience and directly contrary to the directives of her general manager, and the requirements of her management duties to train her employees (Ex. 1, page 7 ¶17).  The Plaintiff complains that her store was inspected by, and her general manager came by several times during a week to check on various items.  The inspections were not to micro- manage the Plaintiff as manager, but merely to insure that she was complying with her job duties as a manager.  When the Plaintiff failed to meet the duties of a manager, she was instructed to comply  (Ex. 1, page 7 ¶18).  The allegation that the Plaintiff as manager was given warnings for non-managerial duties misses the issue that it is the managers duty to assign those tasks and it is to the manager that the fault lies when those tasks are not completed.  The very nature of a manager is to insure that those issues or problems do not occur and that the employees are assigned specific roles and duties to accomplish the tasks necessary to comply with the health and cleanliness for any food service establishment.  (Ex. 1, page 7 ¶18).

      The Plaintiff also complains of the inoperability of the drive through windows requiring her to often work outside in non-managerial duty (ECF No. 30, page 2, ¶7).  However, in the entire time the Plaintiff worked for TC PAYROLL, LLC, there were only three (3) breakdowns noted (Ex. 1, page 8, ¶19).

      The role of a general manager is to assist the store manager when there is an operational problem that can not be resolved.  Such is the case of employees failing to show for work.  The store manager does not cover the shift as alleged by the Plaintiff (ECF No. 30, page 2, ¶1) but is required to call  in other employees of her store to work the shift as necessary.  If no

additional employee is available for work because of short notice, the general manager will step in and ask for employees from other stores to cover. This again is the nature of a tiered support system, not to control the store manager, but to provide assistance and additional resources when an individual store such as the one managed by the Plaintiff has a specific problem (Ex. 1, page 8 ¶20). The Plaintiffs additional complaints that her general manager complained to her about items that she had not properly ordered and was therefore closely supervising the Plaintiff again establishes the lack of understanding of the Plaintiff as to what her managerial duties were. When the Plaintiff as manager constantly allows her store to be out of product which is readily available to all stores resulting in the lack of everyday products being ready and available to customers, it is a deficiency that must be corrected. What's more, the discovery of the lack of proper ordering does not come from close supervision but rather from the Plaintiff's requests for assistance in obtaining product at the last moment by requesting assistance from either additional stores or her general manager. In a business where sales are the preeminent goal, the lack of sales because of a lack of product to sell is of serious concern, and is immediately noticed by everyone in the Defendant company, as it indicates a loss of revenue. A loss of revenue can not be sustained in any business. (Ex. 1, page 8 ¶20).

## CONCLUSION

The Defendants are entitled to the Executive Exemption under 29 U.S.C.S., § 213(a)(1) as the Plaintiff is 1) an employee who is compensated in excess of $450.00 per week; 2) her primary duty is as manager of the Dunkin Store located in Palm City, Florida; 3) the Plaintiff as manager customarily and regularly directed two (2) or more full time employees, usually five (5) or more employees at any time, with a staff of twenty-five to thirty (25-30) which she managed

and 4) the employee had the ability to hire and fire other employees and not only are her suggestions and recommendations given particular weight, her suggestions and recommendations for hiring and firing have never been overruled.

WHEREFORE, as the Defendants meet the requirement for the Executive Exemption, the Plaintiffs for Motion for Partial Summary Judgment should be denied.

Respectfully submitted,

BY:___/s/ Dean L. Willbur, Jr._____
      DEAN L. WILLBUR, JR.
      FLORIDA BAR NUMBER:   286222
      DEAN L. WILLBUR, JR., P.A.
      Attorney for the Defendants
      11380 Prosperity Farms Road, Suite 110A
      Palm Beach Gardens, Florida 33410
      (561) 775-7577 Telephone
      (561) 775-8779 Facsimile
      Primary:       Eservice@deanlwlaw.com
      Secondary:   Dean@deanlwlaw.com
      Secondary:   Staci@deanlwlaw.com

BY:___/s/ Mark Wilensky_____
      MARK WILENSKY
      FLORIDA BAR NUMBER: 290221
      DUBINER & WILENSKY, L.L.C.
      Attorney for the Defendants
      1200 Corporate Center Way, Suite 200
      Wellington, Florida 33414
      (561) 655-0150 Telephone
      (561) 833-4939 Facsimile
      E-Service: dubiner_wilensky@bellsouth.net

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 4, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached service list by Electronic Filing generated by CM/ECF.

BY: /s/ Dean L. Willbur, Jr.
_____
Dean L. Willbur, Jr.

## SERVICE LIST

*Service by CM/ECF*
Beth Coke, Esquire
Coke Employment Law
Attorney for the Plaintiff
131 N. 2nd Street, Suite 204
Fort Pierce, Florida 34950
Telephone: 772-252-4230
Facsimile:   772-252-4575
beth@cokeemploymentlaw.com

DEAN L. WILLBUR, JR.
DEAN L. WILLBUR, JR., P.A.
Attorney for the Defendants
11380 Prosperity Farms Road, Suite 110A
Palm Beach Gardens, Florida 33410
(561) 775-7577 Tel (561) 775-8779 Facsimile
Primary:         Eservice@deanlwlaw.com
Secondary:    Dean@deanlwlaw.com
Secondary:    Staci@deanlwlaw.com

MARK WILENSKY
DUBINER & WILENSKY, L.L.C.
Attorney for the Defendants
1200 Corporate Center Way, Suite 200
Wellington, Florida 33414
(561) 655-0150 Tel (561) 833-4939 Facsimile
E-Service: dubiner_wilensky@bellsouth.net